UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MICHAEL MARR, #186617,        )
                              )
            Plaintiff,        )     Case No. 1:07-cv-1201
                              )
v.                            )     Honorable Janet T. Neff
                              )
JAMES JONES, et al.,          )     **REPORT AND RECOMMENDATION**
                              )
            Defendants.       )
_____)

This is a civil rights action brought *pro se* by a state prisoner under 42 U.S.C. § 1983. Plaintiff is currently an inmate at the Carson City Correctional Facility (DRF). His complaint relates to the handling of his outgoing mail in October and November of 2007, while he was an inmate at the Muskegon Correctional Facility (MCF). The four State employees at MCF that plaintiff named as defendants are: (1) Assistant Resident Unit Supervisor (ARUS) James Jones;[1] (2) ARUS Beverly E. Weathersby; (3) ARUS William Wright; and (4) Assistant Resident Unit Manager (ARUM) Phyllis Brown. Plaintiff alleges that defendants violated his First and Fourteenth Amendment rights in the handling of his "legal mail." Plaintiff sued defendants in their individual capacities for monetary damages and declaratory relief. Plaintiff asks the court to exercise supplemental jurisdiction over state-law claims.

---

[1] Plaintiff originally named Ada Jones as a defendant. On September 12, 2008, the court entered an order granting plaintiff's motion to amend his complaint by substituting the name James Jones in the place of Ada Jones. (9/12/08 Order, docket # 27).

Plaintiff's allegations against each defendant are as follows:

- **James Jones**

    On October 8, 2007, plaintiff asked defendant Jones to process two outgoing "legal mail" packages addressed to Michigan's Attorney General, Mike Cox. Plaintiff alleges that Jones "began to censor" this mail and threatened to refuse to process it. (Complaint, ¶ 10).

- **Beverly Weathersby**

    On October 12, 2007, Beverly Weathersby allegedly stated that she would sign all disbursements for plaintiff's outgoing legal mail except plaintiff's mail to Attorney General, Mike Cox. (Complaint, ¶ 11). On October 29, 2007, Weathersby purportedly read legal mail that plaintiff was sending out of the prison through the disbursement process. (*Id.*, ¶ 17). Plaintiff alleges that on October 30, 2007 Weathersby read his outgoing legal mail (*Id.*, ¶ 18), and that on November 5, 2007, she read a letter that plaintiff had addressed to Attorney Thomas S. Hirsbrunner. (*Id.*, ¶ 19).

- **Phyllis Brown**

    On October 12, 2007, plaintiff contacted defendant Weathersby's supervisor, Phyllis Brown, regarding Weathersby's decision not to sign the disbursement slip for plaintiff's mail to Mike Cox. Plaintiff alleges that Brown "made several phone calls and searched her office computer for policy language to determine whether the attorney general qualified for legal mail disbursements." (*Id.*, ¶ 12). Plaintiff alleges

>that defendant Brown processed his October 12, 2007 "legal mail" to Attorney General Cox "after censoring the contents thereof." (*Id.*, ¶ 16).

• **William Wright**

>On October 12, 2007, defendant Wright entered Phyllis Brown's office and "informed Defendant Brown that he had previously authored and sent an e-mail transmission to Ms. Melody Wallace in Lansing regarding the content of Plaintiff's outgoing legal mail as he [Wright] was unfamiliar with the Constructive Legal Notices that [Plaintiff] Marr had sent out the other day through him [Defendant Wright]." (Complaint, ¶ 13)(internal quotations omitted).

The matter is currently before the court on defendants' motion for summary judgment based on the affirmative defense of plaintiff's failure to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a). (docket # 13). Plaintiff filed a brief in opposition to defendants' motion (docket # 17), defendants filed a reply brief (docket # 19), and defendants' motion has long been ready for decision. For the reasons set forth herein, I recommend that defendants' motion for summary judgment be denied.

## Applicable Standards

### A. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *S.S. v. Eastern Ky. Univ.*, 532 F.3d 455, 452 (6th Cir. 2008). The standard for determining whether summary judgment is appropriate is "whether 'the evidence

presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *El Bey v. Roop*, 530 F.3d 407, 413 (6th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Smith v. Williams-Ash*, 520 F.3d 596, 599 (6th Cir. 2008).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Where, however, a moving party with the burden of proof seeks summary judgment, he faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). As shown above, the moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. "But where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining*

*Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)).  The United States Court of Appeals for the Sixth Circuit has repeatedly emphasized that the party with the burden of proof faces "a substantially higher hurdle" and "'must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000))*; Cockrel*, 270 F.2d at 1056 (same).  Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact."  *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).  This higher standard applies because lack of exhaustion under 42 U.S.C. § 1997e(a) is an affirmative defense.

>  **B.    Standards Applicable to Affirmative Defense of Failure to Exhaust Remedies**

Defendants have asserted the affirmative defense of plaintiff's failure to exhaust administrative remedies.  A prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies.  42 U.S.C. § 1997e(a); *see Jones v. Bock*, 549 U.S. 199, 220 (2007); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731 (2001).  A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process.  *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 734.  In *Jones v. Bock*, the Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints."  549 U.S. at 216.  The burden is on defendants to show that plaintiff failed to properly exhaust his administrative remedies.  The Supreme Court reiterated

that "no unexhausted claim may be considered." 549 U.S. at 220. The Court held that when a prisoner complaint contains both exhausted and unexhausted claims, the lower courts should not dismiss the entire "mixed" complaint, but are required to dismiss the unexhausted claims and proceed to address only the exhausted claims. 549 U.S. at 219-24.

In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules established by state law. *Jones v. Bock*, 549 U.S. at 218-19. In *Woodford v. Ngo*, 548 U.S. 81 (2006), the Supreme Court held that the PLRA exhaustion requirement "requires proper exhaustion." 548 U.S. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90. Thus, when a prisoner's grievance is rejected by the prison as untimely because it was not filed within the prescribed period, the prisoner's claim is not "properly exhausted" for purposes of filing a § 1983 action in federal court. *Id.* at 90-93; *see* 42 U.S.C. § 1997e(a).

MDOC Policy Directive 03.02.130 (effective July 9, 2007) sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. (*See* docket #17, Ex. D). Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* The Policy Directive also provides the following directions for completing grievance forms: "The issues shall be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).

Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). Thus, where an individual is not named in the Step I grievance, or his or her involvement in the issue being grieved is not indicated, or the individual is mentioned for the first time during an appeal of a denial of a grievance, the claims against that individual are not properly exhausted. *See Davis v. Straub*, No. 1:07-cv-156, 2008 WL 696603, at * 5 (W.D. Mich. Mar. 13, 2008).

The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. P.D. 03.02.130 at ¶¶ W, X. Prisoners are required to use "a Prisoner/Parolee Grievance (CSJ 247A) [form] to file a Step I grievance." *Id.* at ¶ R. If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. The respondent at Step II is designated by the policy. The Step II respondent is generally the warden. *Id.* at ¶ DD. If the inmate is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶ FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the Step III respondent. *Id.* at ¶ GG. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ S. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved in writing ...." *Id.*

Ordinarily, a prisoner must pursue appeals of his grievance through Step III of the administrative process. An argument that it would have been futile to file a grievance does not suffice. Assertions of futility do not excuse plaintiff from the exhaustion requirement. *See Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir.1999) ("[A]n inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations."); *see also Booth v. Churner*, 532 U.S. at 741 n. 6 ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise."); *Jones v. Douglas*, 108 F. App'x 254, 256 (6th Cir.2004).

Policy Directive 03.02.130 contains provisions for "modified access" to the grievance process for prisoners with a history of abusing the grievance system. *Id.* at ¶¶ HH-LL. "A prisoner . . . who files an excessive number of grievances which are vague, duplicative, raise non-grievable issues, or contain prohibited language as set forth in Paragraph G, or is found guilty of misconduct for filing an unfounded grievance as set forth in paragraph L, may have access to the grievance process limited by the Warden . . . for an initial period of not more than 90 calendar days." *Id.* at ¶ HH. While on modified access, a prisoner is "able to obtain Step I grievance forms only through the Step I Grievance Coordinator." *Id.* at ¶ KK; *see Jackson v. Madery*, 158 F. App'x 656, 660 (6th Cir. 2005). "[A] prisoner on modified access must make an attempt to obtain a grievance form from the Step I coordinator." *Sarah v. Heidtman*, 97 F. App'x 550, 551 (6th Cir. 2004). "A grievance form shall be provided if the Step I Grievance Coordinator determines that the issue the prisoner . . . wishes to grieve is grievable and otherwise meets the criteria outlined in this policy. The Grievance

Coordinator shall maintain a record of requests received for grievance forms and whether the request was approved or denied and, if denied, the reason for the denial." P.D. 03.02.130, ¶ KK.

The current version of Policy Directive 03.02.130, like its predecessors, does not establish any administrative procedure for a prisoner on modified access to appeal after a grievance coordinator has denied the prisoner's request for a Step I grievance form on a non-frivolous complaint. The United States Court of Appeals for the Sixth Circuit has consistently held that a Michigan prisoner who has been denied a Step I grievance form under such circumstances has exhausted his available administrative remedies. *See Walker v. Michigan Dep't of Corr.*, 128 F. App'x 441, 446 (6th Cir. 2005); *Kennedy v. Tallio*, 20 F. App'x 469, 470 (6th Cir. 2001)("If a prisoner has been placed on modified access to the grievance procedure and attempts to file a grievance which is deemed to be non-meritorious, he has exhausted his 'available' administrative remedies as required by § 1997e(a).").

## Proposed Findings of Fact

On August 8, 2007, MCF's warden found that plaintiff had abused the grievance process and placed plaintiff on modified access for the ninety-day period from August 28, 2007 to November 28, 2007. (docket # 17, Ex. A). The warden's notice to plaintiff stated as follows:

> You are hereby notified that you are being placed on the Department wide Modified Access list. PD-03.02.130, Prisoner/Parolee Grievances, page # 7, under the heading of Modified Access, item JJ, states in part: "A prisoner or parolee who files an excessive number of grievances which are frivolous, vague, duplicative, raise non-grievable issues, or contain prohibited language as set forth in Paragraph G, or is found guilty of misconduct for filing an unfounded grievance as set forth in Paragraph L, may have access to the grievance process limited by the Warden or FOA Area Manager for an initial period of not more than 90 calendar days. If the prisoner or parolee continues to file such grievances while on modified access, the Warden or FOA Area Manager may extend the prisoner's or parolee's modified access status for not more than an additional 30 calendar days for each such violation."

> Prisoner Marr, you have filed three rejected grievances in the past three months. The grievances were rejected for the following reasons: One for being untimely and two were rejected because you attempted to grieve the content of policy. This behavior is not acceptable and is considered abusing the grievance process.
>
> You will be placed on the Modified Access list as of 8/29/07 and that action will remain until 11/29/07. During that time period you are prohibited from writing any grievance without the permission of the Grievance Coordinator. To obtain the permission of the Grievance Coordinator you must first kite the grievance coordinator and state your grievance. If the Grievance Coordinator finds your issue lacks merit he will not send you a grievance form and you will receive no further response in any way on that issue. Should you submit any grievance without authorization at any step to any employee, they will not be processed. If you attempt to grieve the issue further [through] kites, letter, memorandum and circumvent the modified access status you may be subject to 30 day extensions.

(docket # 17, Ex. A).

On October 11, 2007, plaintiff drafted an informal complaint or kite, requesting a Step I grievance form from Grievance Coordinator Brevard against Ada Jones, claiming that Jones had read plaintiff's legal mail on October 8, 2007 (docket # 17, Ex. E). Plaintiff drafted a companion document dated October 12, 2007, which he addressed to "Mr. Michael Cox, Michigan Attorney General" and labeled as a "Constructive Legal Notice." In this document, plaintiff declared under penalty of perjury that he sent the attached request for a Step I grievance form against Jones to MCF's grievance coordinator on October 11, 2007. (*Id.*).

On October 12, 2007, Acting Grievance Coordinator R. Cochran sent plaintiff a one-paragraph memorandum regarding plaintiff's recent series of requests for grievance forms. Mr. Cochran indicated that he had received "several request[s] for Step I grievances" from plaintiff. Mr. Cochran did not state the date or dates on which he received these requests, nor did he state the substance of each request and the reason or reasons for denying each request. Instead, Mr. Cochran lumped all plaintiff's requests together and stated that they were without merit because they were

"duplicative, vague, [or sought to grieve] the content of policy/procedure, etc." Mr. Cochran advised plaintiff that no Step I grievance forms would be provided. (docket # 17, Ex. J).

James Armstrong, Manager of the Prisoner Grievance Appeals Section of the MDOC, states in his affidavit that plaintiff "did not file any Step III grievances regarding staff reading his legal mail while at the Muskegon Correctional Facility in October and November 2007" and did not "forward a Step I or II response or written Step III grievance regarding any manner during the time of October and November 2007." (docket # 13, Ex. 1, Armstrong Aff. ¶¶ 6-8). Armstrong's affidavit fails to mention plaintiff's "modified access" status from August 28, 2007 to November 28, 2007, and his affidavit does not identify any administrative remedy available to plaintiff after the grievance coordinator denied plaintiff's request for a Step I grievance form.

On October 16, 2007, plaintiff drafted a kite (docket # 17, Ex. F) requesting a Step I grievance form from MCF's grievance coordinator for actions purportedly taken on October 12, 2007 by defendants Weathersby, Brown, and Wright which correspond to the allegations appearing in paragraphs eleven through sixteen of plaintiff's complaint. Plaintiff prepared a companion "Constructive Legal Notice" addressed to Attorney General Cox, which states, among other things, as follows:

> I Michael Marr, hereby declare under penalty of perjury that I sent the attached Request to the MCF Grievance Coordinator on October 16, 2007.
>
> This Notice shall be sufficient to refute any claims by you that I failed to exhaust my administrative remedies. Any such claims will be deemed frivolous and I will move for sanctions accordingly.

(docket # 17, Ex. F).

On October 30, 2007, plaintiff drafted a kite addressed MCF's grievance coordinator requesting a Step I grievance form so that he could "grieve Ms. Beverly Weathersby for reading [his] confidential outgoing legal mail on October 29, 2007 at 0845 hours." Plaintiff's "Constructive Legal Notice" stated under penalty of perjury that he had submitted the attached request for a grievance form to MCF's grievance coordinator. (docket # 17, Ex. G).

On November 2, 2007, James Armstrong wrote a letter to plaintiff advising him that his letters requesting grievance forms were being returned. While plaintiff was on modified access status he was required to submit his requests for grievance forms to the grievance coordinator. (docket # 17, Ex. M). On November 5, 2007, Mr. Armstrong wrote a letter to plaintiff advising him that the attorney general was not part of the MDOC's grievance process. Thus, plaintiff could not exhaust his available administrative remedies through the "Constructive Legal Notices" of plaintiff's own invention: "The Attorney General does not have anything to do with the prisoner grievance process nor do they handle grievance requests for prisoners on modified access status." (docket # 17, Ex. N). This letter concluded with a paragraph advising plaintiff that while he was on modified access status, he was required to submit his requests for grievances to the prison's grievance coordinator. (docket # 17, Ex. N).

On November 5, 2007, plaintiff requested a Step I grievance form against defendant Weathersby because she allegedly censored plaintiff's outgoing mail to Attorney Thomas Hirsbrunner. (docket # 17, Ex. I). Plaintiff prepared another "Constructive Legal Notice" addressed to Attorney General Cox. (*Id.*).

On November 8, 2007, Grievance Coordinator Brevard sent plaintiff a memorandum regarding plaintiff's kites from October 2, 2007 to October 31, 2007. (docket # 17, Ex. O). In

-12-

response to plaintiff's claim that Brevard had not responded to 38 kites dated between October 2, 2007 and October 31, 2007, Brevard stated that he had been off work during the period from October 1, 2007 to October 23, 2007. Plaintiff's kites during that period had been reviewed by Acting Grievance Coordinator Cochran. With regard to plaintiff's "kites from 10/25/07 to 11/1/07" Brevard stated that the kites had been reviewed and found to be without merit, with the only exception being a kite dated October 29, 2007 which was "never received at [the grievance coordinator's] office." (docket # 17, Ex. O).

On November 20, 2007, the warden sent plaintiff a memo regarding his complaints concerning Grievance Coordinator Brevard. This response advised plaintiff that Brevard had been on extended sick leave from October 1, 2007 through October 23, 2007, and would have been unavailable to respond to plaintiff's requests. Acting Grievance Coordinator Cochran had responded to plaintiff's inquiries during this time frame and had advised plaintiff that his requests were without merit. (docket # 17, Ex. P).

## Discussion

Defendants face a high burden of proof on their motion for summary judgment based on the affirmative defense of plaintiff's failure to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a). Defendants' brief (docket # 14) fails to mention the fact that from August 28, 2007 to November 28, 2007, plaintiff was on modified access to the grievance process, and defendants provide no analysis of that restriction's impact on plaintiff's available administrative remedies. Thus, defendants' argument that plaintiff did not file Step I grievances regarding the incidents of alleged mishandling of plaintiff's legal mail and appeal the denial of such grievances

through Step III decisions (Defendants' Brief at 4-5) is misleadingly incomplete. Plaintiff submitted evidence that he requested Step I grievance forms for all the claims he is now alleging against defendants and that the prison's grievance coordinator denied his requests. Defendants have not identified any administrative remedy that remained available to plaintiff under Policy Directive 03.02.130 after the grievance coordinator denied plaintiff's requests Step I grievance forms. Defendants' counsel's failure to cite the applicable Sixth Circuit cases holding that a prisoner denied grievance forms under such circumstances has exhausted his available administrative remedies, *Walker v. Michigan Dep't of Corr.*, 128 F. App'x at 446 and *Kennedy v. Tallio*, 20 F. App'x at 470, is well below the level of practice expected by the court.

Defendants argue that plaintiff's claim against defendant Weathersby alleging that she read his "legal mailings" on October 29, 2007 remains unexhausted:

> On November 8, 2007 Grievance Coordinator Brevard responded to another letter from Plaintiff, stating that Plaintiff had submitted 38 kites between October 2, 2007 and October 31, 2007, that Cochran denied several requests on October 12, 2007, and kites for grievances submitted between October 25, and November 1, 2007 were reviewed and denied as without merit. [Pl. Ex. O]. The letter also says, "**The only exception was the kite dated 10/29/07 which was never received at this office**." It is also noted that I have had numerous conversations with you in which you have not brought many of these issues to my attention." [Pl. Ex. O, emphasis added]. Therefore, Plaintiff's own exhibits establish that Plaintiff has clearly not exhausted his administrative remedies with regard to the October 29, 2007 matter raised in the Complaint.

(Defendants' Reply Brief at 3, docket # 19). Brevard's statement that plaintiff's "kite dated 10/29/07 was never received at this office" does not establish that this claim is unexhausted. The statement appears to have been intended as a denial of plaintiff's request for a grievance form, but it is difficult to envision how Brevard could be denying a request that he "never received." Moreover, plaintiff's kite regarding defendant Weathersby's actions of October 29, 2007 is "dated" October 30, 2007.

(docket # 17, Ex. G).  Defendants did not support their motion for summary judgment with an affidavit from Mr. Brevard regarding the administrative processing of this, or any other, request by plaintiff for a Step I grievance form.  By contrast, plaintiff declared under penalty of perjury in his "Constructive Notice"[2] dated October 30, 2007, that he sent a kite to MCF's grievance coordinator requesting a Step I grievance form regarding defendant Weathersby's October 29, 2007 handling of his "outgoing legal mail."  (docket # 17, Ex. G).

I find that defendants have not carried their burden on the affirmative defense of lack of exhaustion of administrative remedies.

### Recommended Disposition

For the reasons set forth herein, I recommend that defendants' motion for summary judgment (docket # 13) be denied.


Dated:  November 24, 2008            /s/  Joseph G. Scoville
                                     United States Magistrate Judge


### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Neuman v. Rivers*, 125 F.3d 315, 322-23 (6th Cir.), *cert. denied*, 522 U.S. 1030 (1997); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

---

[2] Defendants argue in a footnote of their reply brief that plaintiff's "Constructive Legal Notices" to the Attorney General Cox constituted a waste of time and resources because such correspondence could not possibly exhaust plaintiff's available administrative remedies.  (Reply Brief at 3 n.1).  Defendants are undoubtedly correct in this regard.