UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MICHAEL MARR, #186617,            )
                                  )
            Plaintiff,            )      Case No. 1:07-cv-1201
                                  )
v.                                )      Honorable Janet T. Neff
                                  )
JAMES JONES, et al.,              )      **REPORT AND RECOMMENDATION**
                                  )
            Defendants.           )
_____)

This is a civil rights action brought *pro se* by a state prisoner under 42 U.S.C. § 1983. Plaintiff's complaint concerns the handling of his mail at the Muskegon Correctional Facility (MCF) in October and November 2007. He named four State employees at MCF as defendants: (1) Assistant Resident Unit Supervisor (ARUS) James Jones;[1] (2) ARUS Beverly Weathersby; (3) ARUS William Wright; and (4) Resident Unit Manager (RUM) Phyllis Brown. He sued defendants in their individual capacities and seeks an award of monetary damages and declaratory relief for alleged violations of his First and Fourteenth Amendments rights.[2] (Compl. at 2, 7, docket # 1). Further, plaintiff alleges that defendants violated "Article VI of the Constitution" by "violat[ing] their Constitutional Oath of Fidelity." (*Id.* at 5). He asks that the court, in its discretion, exercise

---

[1] Plaintiff originally named Ada Jones as a defendant. On September 12, 2008, the court entered an order granting plaintiff's motion to amend his complaint by substituting the name James Jones in the place of Ada Jones. (9/12/08 Order, docket # 27).

supplemental jurisdiction over his state-law claims that defendants violated their "State Constitutional Oaths" and policies and procedures. (*Id.* at 2, 6).

The matter is now before the court on defendants' motion for summary judgment. (docket # 35). Plaintiff has filed his response (docket #'s 45-49, 53), and defendants' motion is ready for decision. For the reasons set forth herein, I recommend that defendants' motion for summary judgment be granted, that the court decline to exercise supplemental jurisdiction, and that an order implementing these recommendations be entered. I further recommend that a separate and final judgment be entered in defendants' favor on all plaintiff's federal claims.

## **Applicable Standards**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Synbrandt v. Home Depot U.S.A., Inc.*, 560 F.3d 553, 557 (6th Cir. 2009). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Moses v. Providence Hosp. Med. Centers, Inc.*, 561 F.3d 573, 578 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see Cady v. Arenac County*, 574 F.3d 334, 339 (6th Cir. 2009). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Smith v. Williams-Ash*, 520 F.3d 596, 599 (6th Cir. 2008).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *see Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see Reed v. International Union, United Aerospace & Agric. Implement Workers of Am.*, 569 F.3d 576, 579 (6th Cir. 2009).

**Proposed Findings of Fact**

The following facts are beyond genuine issue. Michigan Department of Corrections (MDOC) does not limit the amount of outgoing mail a prisoner can send. Prisoners are generally permitted to send sealed mail. (P.D. 05.03.118, ¶¶ Q, R (effective 01/01/06), docket # 36, Ex. A Attachment). On a monthly basis, the State of Michigan loans indigent prisoners the equivalent of the postage necessary for mailing ten first class letters. (P.D. 04.02.120, ¶ H (effective 01/01/07), docket # 36, Ex. A Attachment). After an indigent prisoner has exhausted this monthly postage

allotment, the State will loan the prisoner additional funds for the cost of postage, for legal mail, but the prisoner is required to submit this mail unsealed, to allow prison staff to verify that the mail qualifies for a supplemental postage loan under the policy directive. This verification requirement also applies to requests for expedited handling, which only applies to legal mail. (P.D. 05.03.118, ¶¶ J-M, O). The expedited process is designed to have the mail "processed within two business days after its initial receipt by Department staff." (*Id.*, ¶ O).

Plaintiff is an inmate in the custody of the Michigan Department of Corrections serving a lengthy prison sentence.[3] He was an inmate at the Muskegon Correctional Facility (MCF) in October and November, 2007. He was indigent and receiving postage loans from the State during the period at issue. (docket # 2, MDOC Trust Account Statement). He sought expedited handling for the items of outgoing mail at issue in this lawsuit. He has not presented evidence of any instance where he was denied funds to cover necessary postage or suffered prejudice in any lawsuit caused by a failure to process his mail in a timely fashion.

All the defendants in this case are housing unit officers who were confronted with plaintiff's requests that they approve postage disbursements. Operating Procedure 05.03.118 outlines the procedure housing unit officers should follow when confronted with a prisoner's request for expedited mail handling:

> Review material and disbursement in the prisoner's presence on the same day received, if received by 10:00 a.m., or next business day if received after 10:00 a.m. to verify the following:
>
> a. That it is for the payment of filing fees or is postage for legal mail.

---

[3]Plaintiff is wrong when he describes himself as a "detainee." (docket #'s 44-46, ¶ 1). He is a prisoner who stands convicted of the felony of assault with intent to rob while armed. *See Marr v. Harry*, No. 2:07-cv-11348, 2008 WL 4808708 (E.D. Mich. Oct. 22, 2008).

      b.      That the disbursement is correctly and completely filled out, including that it contains the court docket number assigned by the Court Clerk or "new case" if no docket number has been assigned, if applicable. If the prisoner requests certified mail, verifies the prisoner has a court order requiring the legal documents or court filing fee to be mailed using certified mail.

      c      For filing fee disbursement requests at a camp, that the prisoner has sufficient funds in his/her account to pay the filing fee.

(docket # 36, Ex. A, Jones Aff. ¶ 5).

Plaintiff was on modified access to MCF's grievance system at all times relevant to his complaint. He had abused the prison's grievance system and was on modified access during the 90-day period from August 28, 2007, to November 28, 2007. (docket # 17, Ex. A). Prisoners on modified access must ask the grievance coordinator for Step 1 grievance forms. "Constructive legal notices" are documents of plaintiff's own invention that lie at the heart of this lawsuit. By his own telling, plaintiff's constructive legal notice scheme involved sending mail to the Attorney General's office in an effort to create a paper trail that he believed would help him document that he had asked MCF's grievance coordinator for Step 1 grievance forms.[4]

---

[4] While plaintiff was on modified access status he was required to submit his requests for grievance forms to MCF's grievance coordinator. (docket # 17, Ex. M). Plaintiff's states that "He knew that the Grievance Coordinator at the Muskegon Correctional Facility, Matt Brevard, would not keep a log of the requests made nor even acknowledge that he received said requests. Plaintiff designed a system where he would not only make a request to the Grievance Coordinator, but send a copy of that request to the Michigan Attorney General's Office with a declaration that said Request was mailed to the Grievance Coordinator. Plaintiff would then send that Notice and a copy of the Request to the Michigan Attorney General's Office via Legal Mail so that a receipt of mailing would be provided." (Plaintiff's Brief at 5, docket # 17; docket # 36, Ex. E).

Evidence suggests that plaintiff submitted as many as 38 requests for grievance forms in October 2007. On November 8, 2007, Brevard wrote a memorandum in response to plaintiff's claims that he had yet not received a response to these requests. (docket # 17, Ex. O).

### 1. October 8, 2007

On October 8, 2007, plaintiff approached ARUS Jones and asked to have two "outgoing mail packages" receive special handling. Plaintiff has not submitted evidence regarding the actual contents of these two packages.[5] Plaintiff states that the "destination" of this mail was "Michigan Attorney General, Mr. Michael Cox" (Compl. ¶ 10),[6] and his affidavit suggests that the documents were "constructive legal notices." (Plf. Aff. ¶ 4, docket # 46).

### 2. October 12, 2007

On October 12, 2007, plaintiff approached Resident Unit Manager (RUM) Phyllis Brown and requested expedited legal mail handling for the following constructive legal notice:

Re: Constructive Legal Notice

Dear Mr. Cox:

Greetings, Annexed hereto this Notice please find a Request for a Step I Grievance Form Due to Modified Access regarding Ada Jones who likes to disregard the Law and common sense and READ outgoing LEGAL MAIL. If you decide to represent this public servant when this issue is WELL-NOTICED, I shall move for your dismissal. In fact, I am herewith

---

[5] Not all outgoing prisoner mail is "legal mail." What constitutes legal mail is a question of law. *See Jones v. Caruso*, 569 F.3d 258, (6th Cir. 2009); *Salier v. Brooks*, 343 F.3d 868, 871 (6th Cir. 2003). Plaintiff's allegations of the legal conclusion that various envelopes or packages contained "legal mail" do not suffice at the summary judgment stage. *See Doe v. Magoffin County Fiscal Court*, 174 F. App'x 962, 966 (6th Cir. 2006). "It is well settled that the courts should disregard conclusions of law (or ultimate fact) found in affidavits submitted for summary judgment." *Harrah's Entm't Inc. v. Ace Am. Ins. Co.*, 100 F. App'x 387, 394 (6th Cir. 2004)(quoting *F.R.C. Int'l Inc. v. United States*, 278 F.3d 641, 643 (6th Cir. 2002)).

[6] Plaintiff's complaint is verified under penalty of perjury. The portions of plaintiff's pleading satisfying the requirements of Rule 56(e) of the Federal Rules of Civil Procedure are considered as an affidavit in opposition to defendants' motion for summary judgment. *See El Bey v. Roop*, 530 F.3d 407 (6th Cir. 2008); *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000). Legal conclusions, whether asserted by a party in an affidavit or verified complaint, do not suffice to create a genuine issue of material fact for trial. *See Doe v. Magoffin County.*, 174 F. App'x at 966.

asking you to represent me as the Supreme Court has declared that there are no second class citizens and since I am not a public servant I must be their master, accordingly, you work for me and must defend the rights afforded to me.

I Michael Marr, hereby declare under penalty of perjury that I sent the attached Request to Mr. Brevard, MCF Grievance Coordinator on October 11, 2007.

Also take Notice that this Notice shall be sufficient to refute any motion(s) you file regarding failure to exhaust when I commence forth the litigation. Any such motion(s) will be deemed frivolous and I will seek sanctions.

If you have questions, please do not hesitate to call me at the number listed below.

(docket # 17, Ex. E). This constructive legal notice, like all others, was accompanied by a copy of a letter to the prison's grievance coordinator requesting a Step I grievance form. (*Id.*). When faced with plaintiff's request for expedited handling of this piece of mail, defendants Brown and Wright conferred, because neither housing officer had ever encountered a document like plaintiff's constructive legal notice. They attempted to determine whether it qualified to receive processing as expedited mail under Policy Directive 05.03.115, ¶ O. (Wright Aff. ¶ 3, Brown Aff. ¶¶ 6-8; Plf. Aff. ¶ 4, docket # 46; Plf. Aff., ¶¶ 4-5, docket # 48). Although it appeared that plaintiff was attempting to circumvent the grievance process (Brown Aff. ¶¶ 4, 6), the requested disbursement was nonetheless approved. (docket # 17, Ex. E).

### 3. October 29, 2007

On October 29, 2007, plaintiff sought defendant Weathersby's approval for disbursements regarding "numerous" documents. Plaintiff states defendant Weathersby read these documents. (Compl., ¶ 17).

### 4. October 30, 2007

Plaintiff states that on October 30, 2007, while defendant Weathersby was reviewing documents that plaintiff wanted to send by expedited mail, she asked him what he meant by "unkosher soda." (Compl., ¶ 18; Plf. Aff. ¶ 7, docket # 49). On October 30, 2007, plaintiff made a disbursement authorization request asking for expedited mailing of this constructive legal notice:

> Re: Constructive Legal Notice
>
> Dear Mr. Cox:
>
> Greetings. Annexed hereto this Notice please find a copy of a Request for a Step I Grievance form Due to modified access status regarding Beverly Weathersby regarding my outgoing legal mail once more on October 29, 2007.
>
> I, Michael Marr, hereby declare under penalty of perjury that I sent a copy of the attached Request to the MCF Grievance Coordinator on this day October 30, 2007
>
> Any motions regarding the failure to exhaust will be deemed frivolous and I will move for sanctions.

(docket # 17, Ex. G). Plaintiff's disbursement request was approved. (*Id.*).

### 5. November 5, 2007

On November 5, 2007, James Armstrong, Manager of the MDOC's Grievance and Appeals Section, wrote a letter to plaintiff advising him that Attorney General Mike Cox was not part of the MDOC's grievance process. Thus, plaintiff could not possibly exhaust his available administrative remedies through the constructive legal notices: "The Attorney General does not have anything to do with the prisoner grievance process nor do they handle grievance requests for prisoners on modified access status." (docket # 17, Ex. N). Armstrong's letter concluded with a

paragraph reminding plaintiff that while he was on modified access status, he was required to submit his requests for grievances to the prison's grievance coordinator. (*Id.*).

Plaintiff states that on November 5, 2007, defendant Weathersby "censored" the contents of a letter "to attorney Thomas S. Hirsbrunner [P-66919] and commented as to why Plaintiff was using other peoples names in the attached documents." (Compl. ¶ 19). Plaintiff informed Weathersby that he was "requesting intervention and class certification."

### 6. November 6, 2007

On November 6, 2007, plaintiff drafted another constructive legal notice:

Re: Constructive Legal Notice

Dear Mr. Cox:

Greetings. Annexed hereto this Notice is a Request for a Step I grievance Form Due To Modified Access Status regarding the censorship of my outgoing legal mail to an attorney on November 5, 2007. This is becoming a continuous matter with this public servant and I would suggest that you inform Ms. Beverly Weathersby that this is an unauthorized practice which violates clearly established law and departmental policies. This is going to go to court unless you prevent further acts of violations [sic], this could become very costly. Surely you must acknowledge that you have a duty to protect the People of this State and that means me. But that would also imply that you would not condone further acts which would cost the State lots of money for you to represent Ms. Weathersby in court when I am coming after her personal assets.

I, Michael Marr, hereby declare under penalty of perjury that I sent the attached Request to the MCF Grievance Coordinator on November 5, 2007.

By way of this Notice I hereby inform you that when I commence forth the litigation in this matter I will deem any motions in regards to failure to exhaust as frivolous and I will seek sanctions accordingly.

(docket # 36, Ex. F). Plaintiff's disbursement request was approved. (*Id.*).

**Discussion**

1. **Mootness**

Plaintiff is an inmate at the Newberry Correctional Facility. (docket # 53). His claims for declaratory relief against defendants are moot. *See Cardinal v. Metrish*, 564 F.3d 794, 789-99 (6th Cir. 2009); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

2. **Violation of Oaths**

Plaintiff alleges that defendants violated a "U.S. Constitutional Oath" of "Fidelity" contrary to "Article VI of the Constitution." (Compl. at 5). This claim is incomprehensible. Further, violations of "oaths of office" would not provide plaintiff with a section 1983 cause of action for damages. *See Krajicek v. Nichols*, No. 98-1878, 1999 WL 991252, at * 2 (6th Cir. Sept. 28, 1999); *see also Lake v. Granholm*, No. 1:07-cv-572, 2008 WL 724162, at * 2 n.3 (W.D. Mich. Mar. 17, 2008) (collecting cases). Whatever federal claim plaintiff was attempting to assert, it is not supported by law or sufficient evidence to withstand defendants' motion for summary judgment.

3. **Access to Courts**

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Jackson v. Jamrog*, 411 F.3d 615, 619 (6th Cir. 2005). In order to establish a viable claim for interference with his access to the courts, a plaintiff must show "actual injury" in a specific case. *See Lewis v. Casey*, 518 U.S. 343, 349 (1996). The actual injury requirement is not satisfied by just any type of frustrated legal claim. The actual injury must be connected to direct pursuit of a non-frivolous direct appeal from a criminal conviction, a habeas corpus petition or a civil rights action under 42 U.S.C. § 1983 to vindicate "basic constitutional

rights." *Lewis*, 518 U.S. at 354; *see Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) ("'Depriving someone of a frivolous claim . . . deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions.'") (quoting *Lewis*, 518 U.S. at 353). Plaintiff has not presented evidence that he suffered any actual injury. Certainly, the "constructive legal notices" were not sent in connection with any pending habeas corpus or civil rights action. I find that defendants are entitled to judgment in their favor as a matter of law on these claims.

    4.    **Legal Mail**

The Sixth Circuit has consistently held that whether a document constitutes protected legal mail is a question of law. *See Jones v. Caruso*, 569 F.3d 258, 268 (6th Cir. 2009) ("[N]ot all outgoing mail is 'legal mail,' and we have held that what constitutes 'legal mail' is a question of law."); *Sallier v. Brooks*, 343 F.3d 868, 871 (6th Cir. 2003). Therefore, as a threshold matter, the court must first examine the documents that plaintiff claims were legal mail, before proceeding to address issues regarding document handling.[7] *See Sallier*, 343 F.3d at 874-78. Plaintiff's repetition of the legal conclusion that various documents constituted protected legal mail does not suffice at the summary judgment stage. *Doe v. Magoffin County*, 174 F. App'x at 966; *Harrah's*, 100 F. App'x at 394. Plaintiff filed this lawsuit in 2007 and defendants' motion for summary judgment has been pending for a year, yet, with the exception of his "constructive legal notices," plaintiff has not filed any of the underlying documents that he claims that the defendants mishandled. The only items of mail properly before the court are these constructive legal notices.

---

[7] Negligent handling of a prisoner's mail does not rise to the level of a constitutional violation. *See Sims v. Landrum*, 170 F. App'x 954, 957 (6th Cir. 2006).

Mail is not "legal mail" just because it is to or from the Attorney General's office. *See Boswell v. Mayer*, 169 F.3d 384, 388-89 (6th Cir. 1999) (emphasizing that the narrow scope of the Sixth Circuit's holding in *Muhammad v. Pitcher*, 35 F.3d 1081, 1084 (1994), which overturned a MDOC policy that "mail from the Attorney General [was] never, under any circumstances, to be treated as legal mail."). It is patent that plaintiff's constructive legal notices were not intended as confidential communications. No court has ever held that such a "notice" sent by a prisoner to a State's attorney general's office for the express purpose of creating a paper trail to document that the prisoner had requested a grievance form from a prison's grievance coordinator is entitled to constitutional protection. I find as a matter of law that plaintiff's "constructive legal notices" were not "legal mail" entitled to constitutional protection. Therefore, assuming defendants did read some or all of them, plaintiff's First Amendment rights were not violated.[8]

### 5. Qualified Immunity

Alternatively, I find that the defendants are entitled to qualified immunity on all plaintiff's claims for damages stemming from the handling of his constructive legal notices. "The purpose of the qualified immunity defense is to protect public officials from undue interference with their duties and from potentially disabling threats of liability." *Perez v. Oakland County*, 466 F. 3d 416, 426 (6th Cir. 2006). When a defendant raises the defense of qualified immunity, the plaintiff

---

[8] Furthermore, defendants were entitled to review those items, even if they were technically legal mail, as a result of plaintiff's demand for special mail handling. The Sixth Circuit has remarked that a Michigan prisoner who has exceeded his ten-letter allotment must either wait until the next month's allotment of postage or "submit proof that the mail pertains to pending litigation." *Bell-Bey v. Williams*, 87 F.3d 832, 839 (6th Cir. 1996). Having elected to demand special treatment, plaintiff is in no position to complain that defendants reviewed his "constructive legal notices" in an effort to determine his eligibility for special treatment.

bears the burden of demonstrating that the defendant is not entitled to qualified immunity. *See Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009); *Hayes v. City of Circleville*, 474 F.3d 357, 362 (6th Cir. 2007).

In *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), the Supreme Court held that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818; *see Everson*, 556 F.3d at 493. The question whether qualified immunity attaches to an official's actions is a purely legal issue for the court. *See Everson*, 556 F.3d at 494; *Fox v. DeSoto*, 489 F.3d 227, 235 (6th Cir. 2007).

The Supreme Court's decision in *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001), endorsed a two-prong analysis for addressing qualified immunity issues. The first prong is whether the plaintiff has alleged and supported with evidence[9] facts showing that the defendant's conduct violated a constitutional or statutory right. *Saucier*, 533 U.S. at 201; *see Scott v. Harris*, 550 U.S. 372, 376 (2007); *Marvin v. City of Taylor*, 509 F.3d 234, 244 (6th Cir. 2007). The second prong of the qualified immunity inquiry is whether the right was "clearly established at the time of the defendant's alleged misconduct. *Saucier*, 533 U.S. at 201. Judges are permitted to exercise their

---

[9]A qualified immunity defense can be asserted at various stages of the litigation, including the summary judgment stage. *See English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir. 1994). The qualified immunity inquiry at the summary judgment stage is distinguished from the Rule 12(b)(6) stage in that generalized notice pleading no longer suffices, and the broader summary judgment record provides the framework within which the actions of each individual defendant must be evaluated. *See Riverdale Mills Corp. v. Pimpare*, 392 F.3d 55, 62 (1st Cir. 2004). At the summary judgment stage, a plaintiff may not rely on his pleadings. Rather, the issue is whether "the plaintiff has offered sufficient evidence to indicate that what the official did was objectively unreasonable in light of the clearly established constitutional rights." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 905 (6th Cir. 2004); *see Merriweather v. Zamora*, 569 F.3d at 315.

"sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances." *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009); *see Waeschle v. Dragovic*, 576 F.3d 539, 543-44 (6th Cir. 2009). Plaintiff did not satisfy the first prong for the reasons previously stated.

Plaintiff has not shown that the right he claims each defendant violated was "clearly established" such that a reasonable official in the defendant's position, at the time the act was committed, would have understood that his behavior violated that right. 533 U.S. at 201. "This inquiry turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." *Pearson*, 129 S. Ct. at 822. The Supreme Court's decision in *Brosseau v. Haugen*, 543 U.S. 194 (2004), examined the underlying purpose of requiring that the law be clearly established:

> Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, misapprehends the law governing the circumstances she confronted. . . . Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.

543 U.S. at 198. The Supreme Court and the Sixth Circuit have emphasized that the second inquiry "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Brosseau v. Haugen*, 543 U.S. at 198 (quoting *Saucier*, 533 U.S. at 201); *see Silberstein v. City of Dayton*, 440 F.3d 306, 316 (6th Cir. 2006). "'[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant sense.'" *Lyons v. City of Xenia*, 417 F.3d 565, 572 (6th Cir. 2005) (quoting *Brosseau*, 543 U.S. at 199); s*ee Perez*, 466 F.3d at 428 ("Because most legal rights are clearly established at some level of generality, immunity

would be impossible to obtain if a plaintiff were required only to cite an abstract legal principle that an official had 'clearly violated.'"). "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *see Nadar v. Blackwell*, 545 F.3d 459, 473 (6th Cir. 2008) ("[Q]ualified immunity applies unless *any officer* in the defendant's position would have clearly understood that he was under an affirmative duty to have refrained from such conduct."). "Thus, '[t]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001) (quoting *Saucier*, 533 U.S. at 201). Although it is not always necessary to find a case where identical conduct had previously been determined to be unconstitutional,[10] in light of preexisting law, the unlawfulness must be apparent. *See Wilson v. Layne*, 526 U.S. 603, 615 (1999); *Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003). If judges are in disagreement on an issue at the time the defendant acted, it is "unfair" to later subject the defendant to monetary damages "for picking the losing side in the controversy." *Pearson*, 129 S. Ct. at 823. "Ordinarily, a Supreme Court or Sixth Circuit decision on point is necessary." *Carver v. City of Cincinnati*, 474 F.3d 283, 287 (6th Cir. 2007); *see Jackson v. Schultz*, 429 F.3d 586, 592 (6th Cir. 2005). The court must focus on whether, at the time the defendant acted, the right asserted was "clearly established" by the decisions of the Supreme Court or the Sixth Circuit. *See Reynolds v. City of Anchorage*, 379 F.3d 358, 366 (6th Cir. 2004); *Gragg v. Kentucky Cabinet for Workforce Dev.*, 289 F.3d 958, 964 (6th Cir. 2002). "'[Q]ualified immunity protects all but the plainly incompetent or those who knowingly

---

[10]"Of course, in an obvious case, [general constitutional] standards can 'clearly establish' the answer, even without a body of relevant case law." *Brosseau*, 543 U.S. at 199.

violate the law.'" *Armstrong*, 432 F.3d at 699 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "Thus, officials are 'entitled to qualified immunity [when] their decision was reasonable, even if mistaken.'" *Toms v. Taft*, 338 F.3d 519, 524 (6th Cir. 2003) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)); *Humphrey v. Mabry*, 482 F.3d 840, 847 (6th Cir. 2007) ("Qualified immunity leaves government authorities 'ample room for mistaken judgments.'") (quoting *Scott v. Clay County*, 205 F.3d 867, 873 n.9 (6th Cir. 2000)). "If reasonable officials could disagree on the issue, immunity should be recognized." *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999); *see Akers*, 352 F.3d at 1042. "For qualified immunity to be surrendered, pre-existing law must dictate, that is truly compel (not just suggest or allow to raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." *Saylor v. Board of Educ.*, 118 F.3d 507, 514 (6th Cir. 1997); *see Gragg*, 289 F.3d at 964. "The burden of convincing a court that the law was clearly established 'rests squarely with the plaintiff.'" *Key*, 179 F.3d at 1000 (quoting *Cope v. Heltsley*, 128 F.3d 452, 459 (6th Cir. 1997)); *see Perez*, 466 F.3d at 427.

Plaintiff did not have a constitutional right to have his constructive legal notices handled as legal mail. The documents were a creature of plaintiff's own invention through which he unnecessarily burdened the Michigan Attorney General's office with requests for grievance forms that it could not supply. Plaintiff has not shown that the defendants' actions in handling his constructive legal notices violated his clearly established constitutional rights. *See Bell-Bey*, 87 F.3d at 839. I find that defendants are entitled to entry of judgment in their favor as a matter of law on the alternative basis of qualified immunity.

### 6. Supplemental Jurisdiction

Plaintiff asks the court to exercise jurisdiction over purported state-law claims. "Supplemental jurisdiction is a doctrine of discretion, not of plaintiff's right." *Habich v. City of Dearborn*, 331 F.3d 524, 535 (6th Cir. 2003). Generally, where all federal claims have been dismissed, federal courts decline to exercise supplemental jurisdiction over a plaintiff's state-law claims. *See* 28 U.S.C. § 1367(c)(3); *see also Brooks v. Rothe*, 577 F.3d 701, 707 (6th Cir. 2009). There is no reason in this case to depart from the general rule.

### Recommended Disposition

For the reasons set forth herein, I recommend that defendants' motion for summary judgment be granted, that the court decline to exercise supplemental jurisdiction, and that an order implementing these recommendations be entered. I further recommend that a separate and final judgment be entered in defendants' favor on all plaintiff's federal claims.

Dated: March 4, 2010          /s/ Joseph G. Scoville
                              United States Magistrate Judge

### NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).